The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All necessary parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are bound by and subject to the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff-employee and defendant-employer at all times relevant herein.
3. Defendant-employer was an approved self-insured with Riscorp acting as its servicing agent.
4. Plaintiff's average weekly wage at the time of the injury was $350.40, yielding a compensation rate of $233.61, with either party being able to present evidence at the hearing as to the correct average weekly wage.
5. On April 19, 1996, plaintiff sustained a compensable injury by accident when he accidentally fell going up metal steps of a customer of defendant-employer's.
6. Plaintiff's disability from said admittedly compensable injury began on April 29, 1996. On May 11, 1996, defendant-employer agreed to pay and plaintiff agreed to accept temporary total disability compensation benefits beginning April 29, 1996.
7. Defendant-employer paid temporary total disability benefits to plaintiff from April 29, 1996 through June 2, 1996, at the rate of $233.61 per week.
8. Plaintiff returned to work for defendant-employer on June 3, 1996. Plaintiff last worked for defendant-employer on June 6, 1996.
9. On July 25, 1996, plaintiff filed his hearing request seeking reinstatement of his temporary total disability benefits, effective June 7, 1996. On August 8, 1996, defendant reinstated temporary total disability benefits to plaintiff, retroactive to June 7, 1996, without waiving the right to contest reinstatement of benefits under the provisions of N.C. Gen. Stat. § 97-32.1
or Industrial Commission Rule 404A(4).
10. The issues to be determined are:
 (a) Whether plaintiff's return to work from June 3, 1996 was an unsuccessful return to work.
 (b) Whether defendant is entitled to terminate disability benefits to plaintiff, effective June 7, 1996.
 * * * * * * * * * * *
Upon consideration of all of the evidence submitted, the Full Commission finds facts as follows:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, plaintiff was fifty-five years old. He had completed the tenth grade and first started working for defendant-employer on September 13, 1989.
2. Plaintiff was employed by the defendant-employer as an Environmental Monitoring Technician, Field Technician and Courier. In this position plaintiff would collect water samples from defendant-employer's various customers. Plaintiff was required to drive as much as 1,000 miles per week and carry coolers weighing as much as sixty pounds.
3. The parties stipulated to the compensable injury of Friday, April 19, 1996. On that date plaintiff was performing his work duties for R A and was delivering some bottles to Proctor Silex in Mount Airy, NC. It was raining that day as he started to climb steps located outside the building where he was delivering bottles. As he started up the steps, his right foot slipped off the wet metal step, his right ankle twisted around, and he lost his balance, twisted his body around, and fell, landing on the corners of the metal steps on his right leg, right buttocks and hip and lower back.
4. Plaintiff was initially seen and treated by Dr. Lowe at PrimeCare on Holden Road, Greensboro, NC, on May 7, 1996. Plaintiff informed Dr. Lowe that he had fallen at work, sustaining a blow to the lateral aspect of his right hip. Since then, he had pain in the hip and back. Plaintiff also informed Dr. Lowe that Dr. Taft had operated on his back on May 22, 1986, that he had some left leg pain prior to surgery and occasional pain in the right leg, but nothing like the character of pain that he had when he saw Dr. Lowe after sustaining the April 19, 1996 injury.
5. On May 22, 1986 plaintiff had undergone a hemilaminectomy and excision of a ruptured disc at the L5-S1 disc space on the left, due to severe lower back pain which radiated down his left leg. The operating orthopedic surgeon, Dr. Charles Taft, assigned a 15 percent permanent partial impairment to plaintiff's back upon recovery in 1986.
6. From the time of Plaintiff's employment at R A in 1989 until February 27, 1996, and despite his prior back surgery, he had only minor complaints of right leg pain and some complaints of lower back pain off and on, but did not miss work due to any back or right leg pain problems except as set forth in paragraph 7 immediately following.
7. On February 27, 1996 plaintiff saw his family physician Dr. Leo Record, who recorded a history that Plaintiff experienced the onset of low back pain while driving his truck down the road, and the back pain was of 4 days, duration. Dr. Record also recorded a history of a little low back pain all the time, but hurting much more by February 27, 1996, with no radiation of the pain into either leg. Due to his increased lower back pain Plaintiff was unable to work at R A for about 9 days during the period of about March 2 through about March 10, 1996, when he returned to his regular duties, with his increased back pain condition resolved.
8. When Dr. Lowe initially saw plaintiff on May 7, 1996 he was out of work and he continued him out of work until June 3, 1996. Dr. Lowe treated plaintiff's condition with physical therapy and medication. On May 21, 1996, Dr. Lowe noted that plaintiff was much better and indicated that he had reached maximum medical improvement; however, the Full Commission finds that plaintiff had not reached maximum medical improvement. Dr. Lowe released plaintiff to return to work the following Tuesday with no permanent partial disability secondary to his injury and did not schedule plaintiff for another appointment, but plaintiff could return if he had difficulties.
9. Thereafter, plaintiff tried to keep working, but his right leg kept hurting; he was unable to sleep much at night due to right leg pain which also interfered with his ability to walk and with his ability to get in and out of his truck. He also complained of pain in his right hip, both front and back, and in the side of his right hip down to his knee, with some tingling in his leg and right foot such that by April 29, 1996 he became unable to continue working due to right leg pain. Since plaintiff's twist and fall onto the metal steps on April 19, 1996, he has had constant right leg pain made worse with any period of prolonged standing, sitting or walking.
10. Dr. Lowe did not see plaintiff after May 21, 1996, but plaintiff called Dr. Lowe's office on June 10, 1996, complaining of pain in his leg and tingling in his foot. Plaintiff indicated that, while working for the defendant post April 19 he had been lifting boxes and standing over a sink and had done nothing to his knowledge to aggravate his hips, and that his hips were not hurting after physical therapy. Dr. Lowe removed him from work and scheduled an epidural steroid injection; plaintiff was not to return to work until he had seen Dr. Taft or someone in Dr. Lowe's office.
11. Following a course of conservative treatment, rest and physical therapy, by about June 3, 1996 plaintiff began a trial return to work effort at R A at new job duties — a job described by his employer as a "light duty job" in the maintenance department. On June 3 and on most of June 4, 1996 plaintiff sat most of the time labeling and bagging empty bottles. At the end of each day his right leg continued to hurt.
12. On June 5, 1996 plaintiff labeled some bottles and then he moved about thirty boxes weighing from 5 to 30 pounds about 40 feet, and placed the boxes on the floor where instructed. Also on June 5, 1996 he washed sample bottles by standing and bending over a sink, which was not quite waist-high. He was able to do this only for about 10 minutes at a time because it hurt his back to bend over the sink. He was allowed to sit and rest, and he did so. On the evening of June 5, 1996 plaintiff's lower back and his right leg hurt worse, keeping him awake most of the night. On June 6, 1996 plaintiff went to work at R A and washed a few bottles, moved a few more boxes, and swept the floor, and by noon that day, his right hip and leg pain and lower back pain had become much worse and was not improved by his changing positions. Plaintiff then had to leave work due to severe right leg pain and increased low back pain, which have not resolved.
13. Starting June 7, 1996 and continuing through at least June 24, 1997, when plaintiff was examined and treated by Dr. William O. Bell, plaintiff's condition had been mainly worsened constant lower back pain and continuing constant right leg pain, with limited ability to sit, stand and walk except for short periods of time; he gained some relief by frequent position changes and medication.
14. On September 9, 1996 plaintiff underwent a lumbar myelogram/CT scan which revealed severe spinal stenosis of the canal at the L4-L5 level, compression of the nerve roots on the right side and disc space narrowing and degeneration of the disc with osteophyte formation at the L5-S1 level of his spine. Dr. Bell recommended lumbar decompression "as soon as it is feasible." Thus, pending this surgery, plaintiff has not reached maximum medical improvement.
15. Plaintiff, since late April 1996, has been unable to earn wages in any employment due to constant right leg pain, exacerbated by any period of prolonged sitting, standing or walking. The medical basis for plaintiff's pain complaints and inability to perform sustained work activity since late April 1996 is the result of plaintiff's compensable fall and result of spinal stenosis causing the compression of a nerve or nerves going down into his right leg. Some stenosis was present prior to the fall but it was asymtomatic and the fall severely aggravated the stenosis that preceded the fall. Basically plaintiff had a weak tibialis anterior and extensor hallucis longus on the right side, which would be indicative of an L5 radiculopathy on the right side, which would coincide with findings on the lumbar myelogram and CT scan. The testimony and exhibits of Dr. William O. Bell support these findings and the Full Commission gives greater weight to his testimony.
16. Plaintiff's return to work effort in the period of June 3 through 6, 1996, at the new job duties, when he was required to move boxes and bend over a sink to wash bottles, was a significant causal factor in his developing increased lower back pain following performing those duties and continuing through at least June 24th, 1997 when plaintiff was examined and treated by Dr. Bell.
17. Plaintiff initially saw Dr. Charles V. Taft on June 24, 1996, at which time plaintiff indicated to him that when he had returned to work on a trial basis he had been placed in another position in which he was now washing and preparing bottles on a concrete floor and plaintiff did not feel that he could do this job. Plaintiff was complaining of pain going down the outside of his right thigh. Dr. Taft noted that he had previously operated on plaintiff's back to correct a herniated disc at L5-S1. Dr. Taft caused a CT Scan and myelogram to be performed, which indicated that plaintiff had moderate to severe stenosis at L4-5. Dr. Taft felt plaintiff had reached maximal medical improvement and gave him a 5% (five percent) permanent partial disability.
18. Dr. Taft indicated, when asked, that he could not relate plaintiff's complaints to his admitted injury of April 19, 1996. Dr. Taft also felt the plaintiff could return to his position as a courier. Dr. Taft is an orthopaedic surgeon.
19. Plaintiff was also seen and treated by Dr. Charles R. Record prior to the injury in this matter, a family practitioner. Dr. Record had seen plaintiff in February 1996, concerning back pain. Dr. Record had taken plaintiff out of work from February 27, 1996 through March 11, 1996, due to back pain. Dr. Record did not treat plaintiff for the injury of April 19, 1996.
20. Dr. Record was asked, in his opinion, whether plaintiff's current back problems are related to his injury of April 19, 1996. Dr. Record was of the opinion that the injury of April 19, 1996 aggravated plaintiff's existing back condition. This opinion is in contradiction of the opinion of Dr. Taft.
21. Plaintiff did not unjustifiably refuse a job offer of the defendant.
22. Plaintiff's request to be treated by Dr. William O. Bell, a neurosurgeon, was made timely, is reasonable and should be allowed by the Industrial Commission. The surgery suggested by Dr. Bell is reasonably calculated to effect a cure, provide relief and/or lessen the period of disability and it also should be allowed by the Industrial Commission.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer when he fell while climbing steps on April 19, 1996. Defendant accepted this claim and has continued to pay benefits to plaintiff. Plaintiff has been unable, because of the compensable injury, to earn wages since April 19, 1996, and his condition is unlikely to change absent surgery recommended by Dr. Bell. N.C. Gen. Stat. §§ 97-2(6); 97-18(b); 97-18(d).
2. Plaintiff's average weekly wage was $350.40 per week, yielding a compensation rate of $233.61. N.C. Gen. Stat. §97-2(5).
3. As a result of the injury by accident, plaintiff is entitled to temporary total disability compensation in the amount of $233.61 per week for his total period of disability. Defendant is entitled to a credit for the time plaintiff attempted to work for defendant and was paid wages although he was physically unable to earn wages for a sustained period due to his compensable injury. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to the payment of medical expenses incurred for the treatment of the injuries he sustained and any further treatment that tends to cure, give relief and/or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
5. Plaintiff did not unjustifiably refuse any job offer of the defendant. N.C. Gen. Stat. § 97-32.
6. Plaintiff's request to be treated by Dr. William O. Bell is reasonable and should be allowed by the Industrial Commission. The surgery suggested by Dr. Bell is reasonably calculated to effect a cure, provide relief and/or lessen the period of disability and it also should be allowed by the Industrial Commission. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Considering the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee hereinafter awarded and to the extent that defendant has not already done so, defendant shall pay to plaintiff temporary total disability benefits at the rate of $233.61 per week for the period from April 19, 1996 through the date of this Opinion and Award and continuing until plaintiff is able to earn his pre-injury wages or until further order of the Industrial Commission. All accrued and unpaid compensation shall be paid in one lump sum with interest at 8% from the date of the hearing before the Deputy Commissioner. Defendant is entitled to wage credit for the time plaintiff attempted to work for defendant and was paid wages although he was physically unable to earn wages for a sustained period due to his compensable injury.
2. Defendant shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury when bills for the same shall have been submitted, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
3. An attorney's fee of 25% (twenty-five percent) of the compensation due plaintiff herein is hereby awarded to plaintiff's counsel and shall be paid as follows: 25% of the amount due plaintiff shall be deducted and paid directly to plaintiff's attorney and every fourth check in the future shall be paid directly to plaintiff's attorney.
4. Plaintiff's request to be treated by Dr. William O. Bell is reasonable and is hereby allowed by the Industrial Commission. The surgery suggested by Dr. Bell is reasonably calculated to effect a cure, provide relief and/or lessen the period of disability and is also hereby allowed by the Industrial Commission.
5. Defendant shall pay the costs of this action.
This the 23rd day of February 2000.
 S/ __________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ______________ CHRISTOPHER SCOTT COMMISSIONER